FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 APR  7  PM 3 01

HARRIS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| RONALD P. JOHNSON, as Personal Representative of THE ESTATE OF H. PAUL JOHNSON, deceased, | Case No. 14-CV-011-SWS |
| Plaintiff, | |
| vs. | |
| ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST, et al., | |
| Defendants. | |

---

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

This matter comes before the Court on motions for summary judgment filed by the following defendants (collectively, "Defendants"):

(1)   Gardner Denver, Inc. (ECF No. 151);

(2)   Bechtel, Inc. (ECF No. 152);

(3)   FMC Corporation (ECF No. 153);

(4)   CBS Corporation (ECF No. 155); and

(5)   General Electric Company (ECF No. 156).

Plaintiff Ronald Johnson filed responses opposing each motion.  (ECF Nos. 160-164.)

The Court heard oral argument on the matters on March 28, 2013.  Having considered the

motions and responses, the arguments of counsel, the record herein, and being otherwise

fully advised, the Court finds the motions should be granted.

## BACKGROUND

This multidistrict litigation was centralized in the Eastern District of Pennsylvania

in 2011.  The Pennsylvania federal court then transferred the lawsuit to this Court in

December 2013 under 28 U.S.C. § 1404(a), primarily based on witness convenience and

evidence availability.  (ECF No. 187.)[1]

Plaintiff Ronald Johnson is the appointed personal representative of the estate of

H. Paul Johnson (Mr. Johnson).  Mr. Johnson died in December 2009 from malignant

mesothelioma (a form of cancer most commonly caused by exposure to asbestos).

Plaintiff contends Mr. Johnson was exposed to Defendants' asbestos during his

years of employment in Wyoming.  Mr. Johnson worked as a carpenter at the Dave

Johnston Power Plant in Wyoming from approximately 1952 to 1963.  In 1963, he

became a "Business Agent" (union representative) for the carpenters union.  As a

Business Agent, he traveled throughout much of Wyoming to visit his carpenter

constituents, meet with businesses, and address any work complaints.  Of significance

---

[1] Some documents appear in the record with both Wyoming and Pennsylvania docket numbers.  All ECF cites in this Order refer to the Wyoming docket numbers.

here, Mr. Johnson visited the Dave Johnston Power Plant (DJPP), the Jim Bridger Power Plant (JBPP), and the FMC Green River soda ash plant at least every month as a Business Agent. He remained a union representative until at least 1978 or 1979, when it appears he moved to Washington State for a while. He later returned to Wyoming (but it's unclear when), where he spent the remainder of his life.

Plaintiff asserts these five defendants either produced asbestos-containing products to which Mr. Johnson was exposed (on a theory of strict product liability) or owned/maintained/controlled the premises on which Mr. Johnson was subjected to asbestos inhalation (on a theory of premises liability). Specifically, Plaintiff alleges Mr. Johnson's work as a Business Agent took him all over the facilities for various formal and informal meetings, which exposed him to the full gamut of each facility's conditions. Defendants seek summary judgment, arguing Plaintiff cannot identify any evidence linking them to Mr. Johnson's mesothelioma.

## CHOICE-OF-LAW

Preliminarily, the Court must resolve a choice of law question. The parties disagree regarding whether Wyoming or Pennsylvania's substantive law governs this lawsuit. Plaintiff argues Wyoming law applies and is less stringent than Pennsylvania's well-developed asbestos law, and Defendants disagree among themselves.

This lawsuit was transferred from Pennsylvania to Wyoming pursuant to 28

U.S.C. § 1404(a).  The United States Supreme Court has made clear that the substantive

law of the transferor court applies.

> We decide that, in addition to other considerations, these policies require a transferee forum to apply the law of the transferor court, regardless of who initiates the transfer.  A transfer under § 1404(a), in other words, does not change the law applicable to a diversity case.

*Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990); *see also Benne v. Int'l Bus.*

*Machines Corp.*, 87 F.3d 419, 423 (10th Cir. 1996) ("The rule is settled that when a

district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is

obligated to apply the law of the state in which the transferor court sits.").  Therefore, this

Court must apply Pennsylvania substantive law to this case, which includes

Pennsylvania's choice-of-law provisions.  *See Trierweiler v. Croxton & Trench Holding*

*Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) ("where a case is transferred from one forum

to another under 28 U.S.C. § 1404(a), as here, then the transferee court must follow the

choice of law rules of the transferor court").

## I.     **Pennsylvania's Choice-of-Law Rules**

Pennsylvania's choice-of-law jurisprudence in personal injury actions sets forth a

two-step inquiry:

> [T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states.  If no conflict exists, further analysis is unnecessary.  If a conflict is

found, it must be determined which state has the greater interest in the application of its law.

*Titeflex Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, --- A.3d ---, 2014 WL 868623, at *6 (Pa. Super. Ct. 2014). Significant to this case, though, "[u]nder general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question." *Id.* at *7 (quoting *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997)). As examined *infra*, the Court finds no true conflict between the applicable Pennsylvania and Wyoming substantive law, and therefore never progresses beyond the first step of Pennsylvania's choice-of-law test.

## II.   Choice-of-Law Analysis Concerning Causation

The two causes of action at issue in the motions for summary judgment are strict product liability and negligence (premises liability). Both Pennsylvania and Wyoming recognize product liability claims based on § 402 of the Restatement (Second) of Torts and require a plaintiff to prove causation as an element of their claim, i.e., that the allegedly defective product was the legal cause of the plaintiff's injuries. *See, e.g., Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. Ct. 2010); *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 342-44 (Wyo. 1986). Pennsylvania and Wyoming's negligence law is identical as well. Pertinent here, both require the plaintiff to prove causation as an element of negligence. *See, e.g., Yorty v. PJM Interconnection, L.L.C.*, 79 A.3d 655, 662

(Pa. Super. Ct. 2013); *Formisano v. Gaston*, 2011 WY 8, 246 P.3d 286, 290 (Wyo. 2011).

To prove legal causation, both states require the plaintiff to show the defendant's product or negligence was a "substantial factor" in bringing about the plaintiff's harm. Pennsylvania recently commented:

> [T]he defendant's conduct must be shown to have been the proximate cause of plaintiff's injury.  Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm.

*Polett v. Pub. Commc'ns, Inc.*, 83 A.3d 205, 212 (Pa. Super. Ct. 2013) (quoting *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978)).  Wyoming describes legal causation in the same terms:

> In order to qualify as a legal cause, the conduct must be a substantial factor in bringing about the plaintiff's injuries.

*Collings v. Lords*, 218 P.3d 654, 657 (Wyo. 2009) (quoting *Foote v. Simek*, 139 P.3d 455, 463 (Wyo. 2006)).

On this much at least, the parties seem to agree.  The disagreement arises when looking specifically at asbestos cases.  Pennsylvania has entertained a significant number of asbestos cases and has refined its test for substantial-factor causation to a greater degree (with specific regard to asbestos cases) than has Wyoming.  To establish a specific

defendant's liability in an asbestos claim, the plaintiff "must establish that the injuries were caused by a product of the particular manufacturer or supplier." *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52 (Pa. Super. Ct. 1988).  To this end, Pennsylvania has adopted the "frequency, regularity, and proximity" standard for determining substantial-factor causation in asbestos cases. *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 225-27 (Pa. 2007).  This standard refers to the claimant's level of exposure to a particular defendant's asbestos-containing product, i.e., it requires the plaintiff to demonstrate the frequency of the use of the product and the regularity of the claimant's employment in proximity thereto. *Eckenrod*, 544 A.2d at 53.  Additionally, Pennsylvania specifies this test is appropriately applied at the summary judgment stage. *Gregg*, 943 A.2d at 227.

This "frequency, regularity, and proximity" standard is undoubtedly a more refined approach to asbestos causation than Wyoming has applied.  However, it is only that—a refinement of the substantial factor requirement for proving causation.  It is not a different legal rule or test.  Recent Pennsylvania cases reinforce the fact that the "frequency, regularity, and proximity" standard measures substantial-factor causation:

> • The three factors "are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's products caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product." *Gregg*, 943 A.2d at 225.
> • "Moreover, with regard to causation, in *Gregg v. V–J Auto Parts Company*, 596 Pa. 274, 943 A.2d 216 (2007), our Supreme Court explained

the appropriate application of the 'frequency, regularity, and proximity' criterion to asbestos product cases at the summary judgment stage." *Vanaman v. DAP, Inc.*, 966 A.2d 603, 607 (Pa. Super. Ct. 2009).

- "Contrary to Crane's and Dana's arguments, we do not find that Appellee's expert's so-called "generalized" opinion in this case contravenes the substantial-factor test for causation as stated in *Gregg.*" *Estate of Hicks v. Dana Companies, LLC*, 984 A.2d 943, 957 (Pa. Super. Ct. 2009).

Thus, the "frequency, regularity, and proximity" standard is not a new or different test or additional element. Instead, it explains what a plaintiff must show in an asbestos case to prove causation, that is, to prove the defendant's actions or products were a substantial factor in bringing about the plaintiff's harms. Accordingly, no conflict exists between Pennsylvania and Wyoming's law on causation.

As further evidence that no conflict exists, the Tenth Circuit, in an unpublished opinion applying Wyoming causation law to an asbestos case, commented that instructing a jury on the "more specific causation test" of frequency/regularity/proximity "would not have been improper," but was unnecessary. *McMahon v. Celotex Corp.*, 962 F.2d 17, at *2 (10th Cir. 1992) (unpublished). The Tenth Circuit noted that the parties in that case were "not in dispute over whether 'frequency, regularity, and proximity' are factors in proving whether a given exposure was a 'substantial factor' in a plaintiff's injury." *Id.* Consequently, if the Wyoming Supreme Court were faced with the issue, this Court is confident it would apply the well-developed and well-reasoned "frequency, regularity,

and proximity" standard when determining substantial-factor causation in an asbestos case.[2]

For purposes of this case, however, the comparison of Pennsylvania's and Wyoming's causation law is academic. Even were the Wyoming Supreme Court to refuse to apply the "frequency, regularity, and proximity" factors, such refusal would not affect the summary judgment decision in this case. "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question." *Titeflex Corp.*, --- A.3d ---, 2014 WL 868623, at *7. As detailed below, the Court will apply Wyoming's generalized law on substantial-factor causation, which Plaintiff claims is more lenient. Even under this standard, however, the Court finds no competent evidence suggesting Defendants' products or actions were a substantial factor in Mr. Johnson's mesothelioma. Consequently, recognizing the rather strange procedure, the Court will apply Wyoming's substantial-factor causation test to Defendants' summary judgment motions, which will prove there exists only a "false

---

[2] Where the Wyoming Supreme Court has yet to decide an issue, the federal court "must attempt to predict how the Wyoming Supreme Court would resolve the issue." *Willis v. Bender*, 596 F.3d 1244, 1254 (10th Cir. 2010). In doing so, the Court looks to "other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 700 (10th Cir. 1998).

conflict" in the states' law because the result will be the same.  This, in turn, will confirm

that Pennsylvania substantive law governs under Pennsylvania's choice-of-law test.[3]

## III.   Choice of Law Analysis Concerning Statute of Repose

Several Defendants seek summary judgment on the alternative ground that the

statute of repose bars Plaintiff's claims against them.  They argue the applicable "real

property improvement" statute of repose requires summary judgment in their favor.

Again, the parties disagree whether Wyoming's or Pennsylvania's construction statute of

repose applies to this case.

Pennsylvania's construction statute of repose is 12 years:

(a)    General rule.--Except as provided in subsection (b), a civil action or
proceeding brought against any person lawfully performing or
furnishing the design, planning, supervision or observation of
construction, or construction of any improvement to real property
must be commenced within 12 years after completion of
construction of such improvement to recover damages for:
(1)    Any deficiency in the design, planning, supervision or
observation of construction or construction of the
improvement.
(2)    Injury to property, real or personal, arising out of any such
deficiency.
(3)    Injury to the person or for wrongful death arising out of any
such deficiency.
.... [Subsection (b)'s exceptions do not apply to this case.]

42 Pa. C.S.A. § 5536.  Wyoming's construction statute of repose uses very similar

language, but is only 10 years long.  Wyo. Stat. Ann. § 1-3-111(a).

---

[3] Incongruously, the Court applies Wyoming law to prove that Pennsylvania law governs.  The law makes fools of us all eventually.

In applying Pennsylvania's choice-of-law test, this two-year difference between the states' statutes of repose offhand suggests a conflict of laws. Again, however, "[u]nder general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question." *Titeflex Corp.*, --- A.3d ---, 2014 WL 868623, at *7. In the instant case, there is no contention that the two-year difference could produce a different result under the statute of repose issue. The claims involving the statute of repose defense assert construction was completed in 1980 or earlier, well more than 12 years before this lawsuit was filed. Accordingly, finding only a "false conflict" between the states' statutes of repose, the Court therefore applies Pennsylvania's statute of repose (because Pennsylvania is the transferor jurisdiction).

## SUMMARY JUDGMENT

The Court now turns to the merits of the parties' summary judgment arguments. The Court begins by setting forth the applicable summary judgment principles, then it will separately consider the parties' causation arguments and their statute of repose arguments.

## I.    General Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted).  In considering the motion, the Court must view the record and all reasonable inferences that might be drawn from it in the light most favorable to the party opposing summary judgment. *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, --- F.3d ---, 2014 WL 643017, at *4 (10th Cir. 2014).

The moving party has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). If the moving party carries this initial burden, the nonmoving party may not rest on its pleadings, but must bring forward specific facts showing a genuine dispute for trial as to those dispositive matters for which it carries the burden of proof.  *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

In pressing their respective burdens, the parties' must rely on evidence that would be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(2); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).  "An affidavit or declaration used to

support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

> Unsubstantiated allegations carry no probative weight in summary
> judgment proceedings. *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th
> Cir. 1992). To defeat a motion for summary judgment, evidence, including
> testimony, must be based on more than mere speculation, conjecture, or
> surmise. *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999);
> *Allen v. Muskogee*, 119 F.3d 837, 846 (10th Cir. 1997).

*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). "[A]t the summary

judgment stage, 'statements of mere belief' in an affidavit must be disregarded." *Argo*,

452 F.3d at 1200 (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir.

1994)).

## II.   <u>Causation Analysis</u>

Recall from the earlier discussion that causation is a required element for both

strict product liability and negligence (premises liability) claims. "In order to qualify as a

legal cause, the [defendant's] conduct must be a substantial factor in bringing about the

plaintiff's injuries." *Killian v. Caza Drilling, Inc.*, 131 P.3d 975, 985 (Wyo. 2006)

(quoting *Turcq v. Shanahan*, 950 P.2d 47, 51 (Wyo. 1997)).

> [I]f the conduct is "that cause which in natural and continuous sequence,
> unbroken by a sufficient intervening cause produces the injury, without
> which the result would not have occurred," it must be identified as a
> substantial factor in bringing about the harm. If, however, it created only a
> condition or occasion for the harm to occur, then it would be regarded as a

remote, not a proximate, cause, and would not be a substantial factor in bringing about the harm."

*Id.* (quoting *Lemos v. Madden*, 200 P.791, 793 (1921)).

### A.    Defendant Bechtel, Inc.

Bechtel, Inc. is an engineering and construction contractor. It served as the general contractor in the design and construction of the Jim Bridger Power Plant (JBPP), and all such work was done by 1980. Bechtel also designed and built an expansion to the FMC Green River soda ash plant, which was completed in November 1977. Bechtel contends it is entitled to summary judgment because there is no evidence linking its work to any asbestos inhaled by Mr. Johnson.

In his response to Bechtel's motion for summary judgment, Plaintiff relies on the testimony of Larry Horton (a heavy equipment operator and union representative who saw Mr. Johnson at JBPP and FMC Green River in the 1960s and 1970s) and Neil Tyree (an electrician who saw Mr. Johnson at JBPP in the 1970s).[4] The Court finds that Horton and Tyree's testimony does not create a genuine dispute of material fact. Of relevance to Bechtel, Horton testified in his affidavit:

> Bechtel was the general contractor for the construction of Units 1-3 at Jim Bridger Power Plant ("JBPP"), and had specifications and blueprints we had to abide by.... Some of these plans called for the use of asbestos insulation. The installation and removal of this insulation created dust which would be breathed in by anyone in the vicinity.

---

[4] In response to all Defendants' motions for summary judgment, Plaintiff relies on the testimony of these two witnesses along with a third, Virgil Faunce.

(Horton Aff. ¶ 3, ECF No. 160 at p. 18.)  The Court initially notes Horton's affidavit

never avers Mr. Johnson was exposed to this dust.  (*See* Horton Aff., ECF No. 160 at pp.

18-19.)  Further, when questioned about his affidavit at his later deposition, Horton stated

that he never actually saw any specifications or blueprints for either JBPP or FMC Green

River:

> Q.      And did you --did Bechtel, as the general contractor, did any of their
>         employees ever give you any job specifications for the construction
>         of the Jim Bridger Power Plant?
> A.      No, they didn't.
> Q.      Did you ever see any blueprints?
> ... [objection]
> THE WITNESS:     No, I didn't.

(Horton Dep. 10:21-11:3, ECF No. 160 at p. 23.)

> Q.      When you were at the FMC plants, did you have an opportunity to
>         review any of the specs or blueprints?
> A.      No.
> Q.      It's fair to say you wouldn't know who prepared those specs or
>         blueprints?
> A.      No, I wouldn't.

(Horton Dep. 114:18-24, ECF No. 160 at p. 49.)

Thus, as his deposition shows, Horton never saw any blueprints by Bechtel and,

therefore, his assertion in his affidavit that the blueprints called for asbestos insulation

was not based on his personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4) ("affidavit or

declaration used to support or oppose a motion must be made on personal knowledge").

As to Bechtel, Plaintiff also relies on the portion of Tyree's affidavit where he stated:

> I saw some of the Bechtel design plans, some of which specifically called for the use of insulation on the pipes and equipment.  I saw Mr. Johnson breathe the dust created during the installation and removal of the insulation Bechtel called for.

(Tyree Aff. ¶ 3, ECF No. 153-3 at p. 16.)  Notably, though, Tyree does not assert this insulation was asbestos.  (*See id.*)  Further, at his later deposition, Tyree affirmed the plans or blueprints did not require asbestos insulation (versus another type of insulation):

> Q.   (BY MS. LINGERFELT)  Okay.  Did you ever see any blueprints?
> A.   Yes, on every job.
> ...
> Q.   Okay.  And do you know if the blueprints ever called for the use of asbestos insulation [at FMC Green River]?
> ... [objection]
> A.   The blueprints, I don't think, called for us, that I recall, called for us to deal with specifically asbestos insulation.

(Tyree Dep. 8:2-17, ECF No. 160 at p. 77.)

> Q.   Okay.  And do you know who created the blueprints [for JBPP]?
> A.   Bechtel.
> Q.   And do you know if the blueprints ever called for the use of asbestos insulation?
> ... [objection]
> A.   I don't recall that they specifically called for asbestos insulation.

(Tyree Dep. 23:24-24:7, ECF No. 160 at p. 81; *see also id.* at 53:8-16, ECF No. 160 at p. 88.)  Tyree even later confirmed he had no personal knowledge that anything at either

JBPP or FMC Green River contained asbestos.  (Tyree Dep. 62:17-63:8, ECF No. 160 at p. 91.)

This backing away from affidavit statements during later depositions is central to all Defendants' motions for summary judgment, so the Court will take a detour to address it now, and this analysis is applicable throughout the remainder of this Order.  Plaintiff contends the witnesses' self-contradictory statements between their affidavits and depositions create a genuine dispute of material fact precluding summary judgment.  The law is clear, however, that self-contradicting statements do not create an issue surviving summary judgment.[5]  Additionally, when an affidavit and deposition from the same person conflict, deposition testimony is considered more favorable for summary judgment purposes because it is subject to cross-examination.[6]  *In re: Citx Corp.*, 448 F.3d 672, 679 (3d Cir. 2006) (citing 10B Wright & Kane, *Federal Practice and Procedure* § 2722 at 373, 379).

---

[5] *See, e.g., Sinskey v. Pharmacia Opthalmics, Inc.*, 982 F.2d 494, 498 (Fed.Cir. 1992) ("to allow [a party] to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56"); *Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1463 (10th Cir. 1996) ("Defendants correctly point out, however, that plaintiff's affidavit contradicts his deposition testimony ..., and thus the affidavit should not be considered."); *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 872 (10th Cir. 1995) ("We agree with the district court that plaintiff cannot create a genuine issue of material fact by contradicting his earlier statement."); *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 391 (8th Cir. 2010) ("A party cannot offer testimony that contradicts the party's earlier statements made under oath to create a genuine issue of material fact."); *Darnell v. Target Stores*, 16 F.3d 174, 176–77 (7th Cir. 1994) (holding that a nonmoving party cannot raise a genuine issue of material fact by submitting an affidavit which has later been recanted in deposition testimony).

[6] In contrast, the three affidavits Plaintiff relies on here to oppose summary judgment were drafted by counsel and mailed to the witnesses for signature.

Defendants have moved to strike the affidavits of some or all of the three witnesses under the "sham affidavit" doctrine, but the Court denies such request. The Court finds the affidavits need not be stricken to decide the summary judgment motions, but considers the deposition testimony more favorable where the two conflict. Additionally, any conflict between a witness's affidavit and deposition, by itself, is not sufficient to raise a genuine dispute of material fact precluding summary judgment.

Returning now from that dalliance and back to Bechtel's motion for summary judgment, the Court finds Horton and Tyree's depositions, as opposed to their affidavits, to be more trustworthy, appropriate grist for the summary judgment mill. And their depositions were clear: Horton and Tyree cannot link Bechtel to any asbestos, let alone any asbestos that Mr. Johnson may have inhaled. The most Plaintiff-favorable thing to be gleaned from Horton and Tyree's depositions, at least with regard to Bechtel, is that Bechtel's plans for JBPP and FMC Green River power stations called for insulation, and the insulation that was ultimately used may or may not have contained asbestos. This is about as far removed from adequate product identification in asbestos cases as one can get.

There simply is nothing in this record showing Mr. Johnson was exposed to a single fiber of asbestos that was attributable to Bechtel. There is no competent, admissible evidence suggesting Bechtel-attributable asbestos played a substantial factor

in bringing about Mr. Johnson's harm.  Plaintiff has utterly failed to link Bechtel in any

fashion to Mr. Johnson's mesothelioma.  Therefore, summary judgment in Bechtel's

favor is warranted because there is no genuine dispute of material fact concerning

causation.

**B.      Defendant CBS Corporation (successor-in-interest to Westinghouse)**

Westinghouse manufactured and/or supplied electrical equipment, including

turbine generators, some of which may have incorporated insulation, for JBPP.

Westinghouse contends it is entitled to summary judgment because there is no evidence

linking its products to any asbestos inhaled by Mr. Johnson.

In response to Westinghouse's request for summary judgment, Plaintiff again

relied on the testimony of Larry Horton and Neil Tyree.  Looking first at Horton's

testimony, his affidavit identified the turbine generators at JBPP as Westinghouse

products:

> I worked around the turbine generator units at JBPP.  The turbine
> generators themselves were Westinghouse.  These generators and work
> done upon them, including the installation and removal of insulation inside
> and on the equipment, created dust which was necessarily breathed by
> anyone working in their vicinity.

(Horton Aff. ¶ 4, ECF No. 160 at p. 19.)  In his later deposition, Horton stated the turbine

"was insulated with asbestos and also with fiberglass insulation."  (Horton Dep. at 15:20-

16:1, ECF No. 160 at p. 24.)  Upon cross-examination, though, Horton's lack of personal

knowledge regarding that insulation became apparent:

> Q.   Mr. Horton, do you know for a fact whether the thermal insulation
>      that was used on the turbine units at Jim Bridger, in fact, contained
>      asbestos?
> A.   Do I know for a fact?
> Q.   Yes, sir.
> A.   I didn't test it.  I knew that there was asbestos on site.  Exactly where
>      it was being used, I don't know.
> Q.   So, the answer is no?
> A.   That's correct.

(Horton Dep. 54:14-24, ECF No. 160 at p. 34.)  Additionally, Horton confirmed that he

did not know which company actually made the insulation for the turbines.  (*Id.* at 73:4-6,

ECF No. 160 at p. 38.)  As it relates to Westinghouse, he even goes one step further and

states Westinghouse did not insulate the turbines:

> Q.   So, Westinghouse didn't insulate these turbines, right?
> A.   No, they didn't.
> Q.   As far as you know, they didn't even make the insulation?
> A.   As far as I know, they probably didn't.

(*Id.* at 73:21-74:3, ECF No. 160 at pp. 38-39; *see also id.* at 92:3-6, ECF No. 160 at p.

43.)  Thus, when questioned about his personal knowledge, he could not identify any

Westinghouse asbestos to which Mr. Johnson could have been exposed while at JBPP or

FMC Green River.  *See* Fed. R. Civ. P. 56(c)(4) ("affidavit or declaration used to support

or oppose a motion must be made on personal knowledge").

The Court encounters the same limitations when examining Tyree's testimony

regarding Westinghouse.  His affidavit made the following pertinent allegations:

> 4.      I worked alongside Paul Johnson at Jim Bridger Power Plant
> ("JBPP").  I saw him in generator units 1-3 and then in Unit 4 when it was
> built later.  Installation and removal of insulation in, on and around these
> generators by other workers created visible dust which was breathed by
> anyone working in their vicinity.  I saw Mr. Johnson breathe this dust.
> 5.      Westinghouse and General Electric were manufacturers of electrical
> equipment at JBPP.   Installation and maintenance on this equipment,
> including the installation and removal of insulation inside and on the
> equipment created dust which I saw Mr. Johnson breathe.

(Tyree Aff. ¶¶ 4-5, ECF No. 153-3 at p. 17.)  On its face, Tyree's affidavit does not

connect this dust to asbestos; it hardly needs to be said that not all dust on a construction

jobsite is asbestos.  Ignoring that missing link, though, Tyree's lack of personal

knowledge became apparent in his later deposition.

> Q.      That's fair.   And, as you sit here now, you have no personal
> knowledge as to what the insulation used at the FMC Corp. [FMC
> Green River] contained; is that correct?
> A.      Pardon me.
> Q.      Do you have any personal knowledge as to what the insulation --
> A.      No, I do not.
> Q.      -- used at the FMC Corp. contained?
> A.      No.

(Tyree Dep. 45:19-46:2, ECF No. 160 at pp. 86-87; *see also id.* at 62:17-63:1, ECF No.

160 at p. 91.)

> Q.      Okay.  Mr. Johnson's attorney asked you a series of questions about
> the insulation at the Jim Bridger Power Plant.
> A.      Yes.

> Q.    Am I correct, as you sit here right now, you have no personal
>       knowledge as to what that insulation contained?
> A.    I do not.

(*Id.* at 53:1-7, ECF No. 160 at p. 88; *see also id.* at 63:2-8, ECF No. 160 at p. 91.)

Again, Horton and Tyree's depositions are clear: they cannot link Westinghouse
to any asbestos, let alone any asbestos that Mr. Johnson may have inhaled. Nothing in
this record suggests Mr. Johnson was exposed to a single fiber of asbestos that was
attributable to Westinghouse. There is no competent, admissible evidence suggesting
Westinghouse-attributable asbestos played a substantial factor in bringing about Mr.
Johnson's harm. Plaintiff has utterly failed to link Westinghouse in any fashion to Mr.
Johnson's mesothelioma. Therefore, summary judgment in CBS Corporation's
(Westinghouse's successor) favor is warranted because there is no genuine dispute of
material fact concerning causation.

### C.    Defendant FMC Corporation

FMC Corporation operates the FMC Green River soda ash plant (and trona mine),
and it manufactures chemical products for use in other industries. Therefore, with regard
to Defendant FMC Corporation, the only location at issue is FMC Green River.

In response to FMC Corporations' request for summary judgment, Plaintiff again
relied on the testimony of Larry Horton and Neil Tyree. Considering Horton first,
Plaintiff relies on his affidavit where Horton states that Bechtel's plans called for

asbestos insulation to be used at FMC Green River, and the insulation dust was breathed

by anyone in the vicinity.  (ECF No. 164 at p. 5 (relying on Horton Aff. ¶ 3, ECF No. 160

at p. 18).)  As already noted, though, Horton's deposition testimony proved this assertion

was not made on personal knowledge, but was rather speculation or belief.

> Q.    Do you have any knowledge as you sit here today that you're able to
> share with us as to what that insulation material was made of [at
> FMC Green River]?
> A.    I don't know.

(Horton Dep. 92:3-6, ECF No. 160 at p. 43.)  He also affirmed he did not read any

blueprints or specifications for FMC Green River.  (*Id.* at 114:18-24, ECF No. 160 at p.

49.)  Horton's testimony does not link Mr. Johnson to any asbestos attributable to FMC

Corporation at FMC Green River.

Plaintiff's reliance upon Tyree's testimony is similarly unavailing.  Plaintiff

highlights Tyree's affidavit where he stated Bechtel's design plans called for asbestos

insulation to be used at FMC Green River, which created dust inhaled by Mr. Johnson.

(ECF No. 164 at p. 5 (relying on Tyree Aff. ¶ 3, ECF No. 153-3 at p. 16 and Tyree Dep.

pp. 7-14).)  At deposition, however, Tyree confirmed that Bechtel's blueprints for FMC

Green River did not specify asbestos insulation versus any other type.  (Tyree Dep. 8:2-

17, ECF No. 160 at p. 77.)  He also stated he did not know what the insulation contained.

(*Id.* at 45:19-46:2, ECF No. 160 at pp. 86-87.)  He even stated he had no personal

knowledge whether FMC Green River contained asbestos anywhere in the facility. (*Id.* at 62:17-63:1, ECF No. 160 at p. 91.)

Horton and Tyree's testimony fails to link FMC Green River to asbestos, let alone any asbestos that Mr. Johnson may have inhaled.  Plaintiff argues Horton and Tyree's self-contradicting statements raise a genuine dispute of material fact (*see* ECF No. 164 at p. 5), but the Court has already discussed that earlier.  Conflicts between the same person's affidavit and deposition do not preclude summary judgment, and deposition testimony is more reliable when considering summary judgment motions because the deponent is subject to cross-examination.   Nothing in this record suggests Mr. Johnson was exposed to a single fiber of asbestos that was attributable to FMC Corporation. There is no competent, admissible evidence suggesting FMC Corporation-attributable asbestos played a substantial factor in bringing about Mr. Johnson's harm.  Plaintiff has utterly failed to link FMC Corporation in any fashion to Mr. Johnson's mesothelioma. Therefore, summary judgment in FMC Corporation's favor is warranted because there is no genuine dispute of material fact concerning causation.

**D.    Defendant Gardner Denver, Inc.**

Gardner Denver manufactures industrial pumps that may have been used at JBPP, which Mr. Johnson regularly visited in his role as union representative.  In response to

Gardner Denver's motion for summary judgment, Plaintiff relies only on Neil Tyree's

testimony.  Of relevance to Gardner Defendant, Tyree stated in his affidavit:

> Work was done on Gardner Denver Pumps at JBPP.  I saw Mr. Johnson
> breathe the dust that was created when other workers disassembled those
> pumps, removed old asbestos packing, and cut & replaced new asbestos
> packing into the pumps.

(Tyree Aff. ¶ 7, ECF No. 153-3 at p. 17.)  This sort of direct statement linking Mr.

Johnson to asbestos from a particular company's product is powerful product

identification (causation) testimony.  Or at least it would be if Tyree had not taken the

initiative in his deposition to clarify that he did not know whether the pumps at JBPP

were actually produced or supplied by Gardner Denver:

> Q.   And did you, before you signed it, did you read over [your
>      affidavit]?
> A.   Yes, ma'am.
> Q.   Is everything in here, to the best of your knowledge, correct?
> A.   Yes.
> Q.   Okay.
> … [objection]
> Q.   (BY MS. LINGERFELT)  And do you have any changes that you
>      would make on it?
> A.   The only changes -- it's difficult for me to remember specific
>      manufacturers, because of so much equipment and that.  So the
>      Gardner Denver pump, I couldn't today swear to you they were
>      Gardner Denver pumps.  I know they were pumps.  And they could
>      very well have been Gardner Denver pumps, but I can't swear to that
>      today.
> Q.   So as we sit here today, that's the only change that you cannot
>      confirm that they were Gardner Denver pumps?
> A.   Yes.
> Q.   There were pumps there?

A.      Yes.

Q.      But you just can't say they were Gardner Denver?

A.      Yes, ma'am.

(Tyree Dep. 29:19-30:17 ECF No. 160 at pp. 82-83.)

Plaintiff relies solely on Tyree's testimony in its response to Gardner Denver's motion for summary judgment.   (See ECF No. 162 at pp. 4-5.)[7]  Tyree's deposition aptly demonstrates he cannot establish any link between Gardner Denver pumps and Mr. Johnson, and that's ignoring for the moment the requirement that Plaintiff show Gardner Denver pumps contained asbestos.  Nothing in Tyree's testimony suggests Mr. Johnson was exposed to a single fiber of asbestos that was attributable to Gardner Denver products.  There is no competent, admissible evidence suggesting Gardner Denver-attributable asbestos played a substantial factor in bringing about Mr. Johnson's harm.  Consequently, summary judgment in Gardner Denver's favor is warranted because there is no genuine dispute of material fact concerning causation.

E.      **Defendant General Electric Co. (GE)**

GE manufactured and/or supplied electrical equipment for the Dave Johnston Power Plant (DJPP), including turbine generators, which may have incorporated

---

[7] The Court notes Virgil Faunce's affidavit also implicated Gardner Denver pumps as producing asbestos dust inhaled by Mr. Johnson at the Dave Johnston Power Plant (DJPP).  (Faunce Aff. ¶ 8, ECF No. 153-3 at p. 26.) Plaintiff did not rely on this testimony in responding to Gardner Denver's motion for summary judgment, however, likely because Faunce's affidavit suffered from numerous issues, which the Court will address in the next subsection.  See also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials ….").

insulation.  Mr. Johnson worked as a carpenter at DJPP in the 1950s until 1963, and later

visited DJPP regularly as a carpenters union representative.

In its response to GE's motion for summary judgment, Plaintiff relies solely on the

testimony of Virgil Faunce, who worked as a laborer at DJPP in the 1950s through 1970s.

(*See* ECF No. 163 at pp. 4-6.)  In his affidavit, Faunce describes the turbine generators at

DJPP:

> The generators themselves were General Electric.  Mr. Johnson and I were
> present when insulators were placing asbestos insulation inside and outside
> the generators in all three units, and I saw him breathe the dust that came
> from that insulation while the insulators cut, installed, and manipulated the
> insulation.

(Faunce Aff. ¶ 7, ECF No. 153-3 at p. 26.)  Examining Faunce's deposition testimony,

however, highlights the numerous issues plaguing his affidavit.  The most glaring

problem is that Faunce swore at his deposition that the affidavit he signed was different

than that filed with the Court:

> Q.    Now, previously you said that you don't remember signing [your
>       affidavit]?
> A.    No.
>       Like I say, I might have, but, I don't -- well, I must have,
> because it looks like my signature.
>       I know I got something, but I know all this wasn't in it.
> Yeah, because I don't know where all this come from.
>       MR. McSHEA:  "All this," the witness is referring to pages 1
> and 2 of a three-page affidavit, the third page being only the witness'
> signature and the notary public signature.  For the record.

(Faunce Dep. 31:7-20, ECF No. 163 at p. 29.)  No less than four additional times during

his deposition Faunce repeated that pages one and two of the three-page affidavit filed

with the Court were different than what he originally signed.  (*See id.* at 12:20-13:24;

37:15-39:15; 75:10-19; 83:8-84:3.)

More specific to GE, though, Faunce's deposition established that he cannot link

asbestos attributable to GE to Mr. Johnson, despite his all-encompassing allegations:

> Q.   And as you sit here today, Mr. Faunce, do you have any
> understanding as to the name of any company that specified the use
> of insulation on any of the equipment at the Dave Johnston Power
> Plant?
> A.   Well, there was Babcock & Wilcox, like I say, and Johns Manville.
> Q.   Okay.
> A.   I don't know.  There was a lot of different companies that had it.
>         General Electric was there and using it.  In fact, every
> company out there used it for some reason or another.
> Q.   When you say General Electric used it, that's a company I represent.
>         They would have been there because it was their turbine that
> was there?
> A.   Yeah, anything, I guess.
> Q.   But they're not an insulation company, are they?
> A.   No.  They just put the motors and stuff in.
> Q.   Right.  They didn't apply insulation to anything, as far as you know?
> A.   I don't think so.
> Q.   Did they require insulation of any kind?
> A.   I couldn't remember, but if they did, I don't know.
> Q.   Okay.  So you're not able to say --
> A.   Yeah.
> Q.   -- whether or not GE, for example, had anything to do with
> insulation at the Johnston Power Plant?
> A.   No.

(Faunce Dep. 63:14-64:25, ECF No. 163 at p. 37.)  When pressed about his affidavit,

Faunce even explained he did not know whether the turbine generators were actually

manufactured or supplied by GE:

> Q.   All right.  And paragraph 7 [of the affidavit], is that right or wrong?
> A.   Well, I think most of that is.
> Q.   Is what?
> A.   Right.
> Q.   Can you read it for the record, please?
> A.   I worked with Paul Johnson when we built the stagging [sic] around turbine generators in this thing, 1 and 3, and work exposed us, all the workers around us.
>> And pipefitters were in the same area doing their work.
>> The generators themselves were General Electric.
>> **Now, as far as I know, I don't know if they were General Electric.  I couldn't tell you.**

(Faunce Dep. 78:19-79:11, ECF No. 163 at p. 41 (emphasis added; sic in original).)  Even

assuming the generators were manufactured and/or supplied by GE, Faunce did not

identify GE as the manufacturer or supplier of the insulation he incriminates as asbestos.

> Q.   Okay.  And you said there were other thing -- other pieces of equipment that you would pull the asbestos insulation out of.  What else was there?
> … [objections]
> A.   Just different things it needed to be covered with it for insulation.
> BY MS. LINGERFELT:
> Q.   Like what?
> A.   Oh, like the pulverizers and different things.  Anything that got too hot to insulate it.
> Q.   Do you remember who the manufacturer was of this insulation?
> A.   Well --
> … [objection]
> THE WITNESS:  Johns Manville put a lot of it in.

BY MS. LINGERFELT:
Q.      Do you remember any other manufacturers?
A.      Well, seemed like a Babcock & Wilcox.  And I'm not sure just who
        all.  There were so many different ones.

(Faunce Dep. 21:22-22:23, ECF No. 163 at pp. 26-27.)  Later in his deposition, Faunce

stated the insulation used on the turbine generators was made by Johns Manville, not GE.

(*Id.* at 53:3-18, ECF No. 163 at p. 34.)

The Court has whipped this dead horse long enough.  Faunce's affidavit is more

than shaky[8] and his deposition provides no nexus between asbestos attributable to GE and

Mr. Johnson.  Nothing in Faunce's testimony suggests Mr. Johnson was exposed to a

single fiber of asbestos that was attributable to GE products.  There is no competent,

admissible evidence suggesting GE-attributable asbestos played a substantial factor in

bringing about Mr. Johnson's harm.  Accordingly, summary judgment in GE's favor is

warranted because there is no genuine dispute of material fact concerning causation.

## III.   Statute of Repose Analysis

As an alternative basis for summary judgment, Defendants (except FMC

Corporation and Gardner Denver) argue the construction statute of repose bars Plaintiff's

claims as it relates to them.  As discussed earlier, Pennsylvania's construction statute of

repose applies under the choice-of-law analysis and is 12 years long.  It restricts civil

---

[8] The Court has detailed some of the many inconsistencies between the three witnesses' affidavits and their later depositions.  The Court reiterates here that it denies Defendants' request to strike the affidavits.  Instead, where the two collide, it finds the depositions more credible and favorable because the depositions allowed the witnesses to correct and explain their earlier misstatements while being subject to cross-examination.

actions "brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property[.]"  42 Pa. C.S.A. § 5536(a).

### A.      Bechtel, Inc.

As the engineer and construction manager for JBPP and the expansion to FMC Green River, Bechtel certainly qualifies as a party furnishing the design, planning, supervision, or construction of an improvement to real property.  Additionally, the evidence establishes this construction occurred in the 1970s and was completed by 1980, far longer than 12 years prior to this lawsuit.  Moreover, there is nothing in the record to suggest Bechtel has performed maintenance on the construction projects within the 12 years preceding this lawsuit.  Consequently, Bechtel, Inc. is entitled to summary judgment based on the statute of repose.

### B.      CBS Corporation (successor-in-interest to Westinghouse)

Westinghouse manufactured and/or supplied electrical equipment, including turbine generators, some of which may have incorporated insulation.  The deposition testimony confirmed these enormous turbine generators were permanent improvements to real property, even requiring their own separate concrete foundations.  (*See, e.g.*, Horton Dep. 74:4-76:11, ECF No. 160 at p. 39; *see also* Faunce Dep. 48:19-49:8, ECF No. 163 at p. 33; 51:14-53:2, ECF No. 163 at p. 34.)  Therefore, the evidence establishes

Westinghouse furnished the design and/or construction of these improvements to real property, which occurred far longer than 12 years prior to this lawsuit. Additionally, there is nothing in the record to suggest Westinghouse (or CBS Corporation) has performed maintenance on the turbine generators within the 12 years preceding this lawsuit. Consequently, at least concerning the manufacture, supply, and construction of the turbine generators, CBS Corporation (Westinghouse's successor) is entitled to summary judgment based on the statute of repose. *See Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 394-95 (Pa. Super. Ct. 2011) (affirming summary judgment in GE's favor based on the statute of repose as to power plant turbines supplied by GE).

### C.    General Electric Co. (GE)

GE manufactured and/or supplied electrical equipment for the Dave Johnston Power Plant (DJPP), including turbine generators, which may have incorporated insulation. As to any turbine generators that may have had asbestos, GE is entitled to summary judgment based on the statute of repose for the same reasons as CBS Corporation.

### CONCLUSION

Plaintiff has not established a genuine dispute of material fact concerning causation. The evidence is such that reasonable minds could not disagree. Applying the generalized substantial-factor causation standard advocated by Plaintiff yields only one

possible result:  The evidence and testimony fail to link a single fiber of asbestos attributable to any of these Defendants to Mr. Johnson's mesothelioma.  The evidence cannot support strict liability (products liability) or negligence (premises liability) causes of action against these Defendants.

Alternatively, the real property improvement statute of repose bars Plaintiff's civil action for damages as to Defendants Bechtel, CBS Corporation, and GE.  The Court finds and concludes these five Defendants are entitled to summary judgment under Federal Rule of Civil Procedure 56(a) on all claims.

## ORDER

**IT IS THEREFORE ORDERED** that the motions for summary judgment filed by the following defendants are hereby **GRANTED**:

(1)    Gardner Denver, Inc. (ECF No. 151);

(2)    Bechtel, Inc. (ECF No. 152);

(3)    FMC Corporation (ECF No. 153);

(4)    CBS Corporation (ECF No. 155); and

(5)    General Electric Company (ECF No. 156).

**DATED** this ____7th____ day of April, 2014.

Scott W. Skavdahl
United States District Court Judge